# United States Court of Appeals
## For the First Circuit

Nos. 18-1924, 18-1985

UNITED STATES OF AMERICA,

Appellee,

v.

BRYAN LARSON,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

Benjamin L. Falkner, with whom Krasnoo, Klehm & Falkner LLP was on brief, for appellant.
Alexia R. De Vincentis, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, and Matthew D. Kim, Harvard Law School, were on brief, for appellee.

February 28, 2020

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.    Defendant Bryan Larson pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5), but reserved his right to appeal the district court's denials of his motions to suppress and for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  He now appeals those denials.  We affirm.

I

On June 11, 2015, a magistrate judge issued a warrant to search a residence at 11 Manchaug Street, in Douglas, Massachusetts.  The warrant was based on an affidavit sworn by Homeland Security Investigations Special Agent Edward Bradstreet.

The affidavit stated that on May 29, an investigator with the Royal Canadian Mounted Police (RCMP) was reviewing accounts on the website http://imgsrc.ru, a Russia-based image hosting site known to contain sexually suggestive images of minor children.  The investigator noticed that an individual with the username "ilovemackenzie" had posted three photo albums entitled "Kenzie"; "my toy"; and "new and nice".  The "Kenzie" album contained 15 non-pornographic images of a prepubescent female who appeared to be around five years old and three images of the same female with a prepubescent male.  The "my toy" album contained 26 images of what the affidavit characterized as a "life-like infant torso with a vagina and anus."  In about a dozen of these

photographs, the torso was shown beneath or being penetrated by an erect adult penis.  Some photographs showed the "torso" partially clothed with children's Cinderella underwear.  The "new and nice" album contained five non-pornographic images of children who appeared to be less than five years old.

The RCMP investigator sent the following message from an undercover email account to an email address displayed on "ilovemackenzie"'s account: "I would like to trade with you!  Here is a little video of my 9 year old daughter!" and included a link. From a different undercover account, the investigator sent the user another message: "Here is a little something....... I am into girls no boy shit please," followed by eight links containing URLs similar to this: www.myvirtualfolder.com/main.php?pthc-2015 the beautiful amanda.avi001. Agent Bradstreet stated in the affidavit that, based on his training and experience, he knew "pthc" stood for "preteen hard core."  The URLs linked to an RCMP-controlled website designed to capture the Internet Protocol (IP) address of the person attempting access.  Over the next few days, an individual with the IP address 24.151.90.79 attempted to gain access to the links on eleven separate occasions.

On June 1, the Department of Homeland Security (DHS) issued a summons to Charter Communications, Inc. for the subscriber information associated with the IP address mentioned above.  This information, along with more uncovered from a Registry of Motor

Vehicles records search, led Agent Bradstreet to focus on 11 Manchaug Street in Douglas, Massachusetts, a two-unit residence occupied by a woman, to whom the IP address was assigned, and Bryan Larson. A search of the Massachusetts Sex Offender Registry revealed that Larson was a Level 2 sex offender, having been convicted of statutory rape of two children in 1994.

Agent Bradstreet sought a warrant to search Larson's residence and to seize evidence of the crimes of attempted receipt and attempted possession of child pornography, 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B). Agents executing the warrant found digital files containing images and videos of child pornography on Larson's computers.

Larson filed a motion to suppress the evidence obtained from the search of his residence and, in the alternative, for a hearing under the rule in Franks v. Delaware, 438 U.S. 154 (1978). After the district court had denied both motions, Larson entered the conditional guilty plea. The district court sentenced him to 138 months imprisonment.

II

The defendant's exercise of his reserved appeal rights includes two challenges to the validity of the search and admissibility of the evidence obtained: 1) that he has made an adequate showing that the warrant was issued on the basis of an affidavit containing a knowingly false or reckless description of

the images in the "my toy" album, so that under the <u>Franks</u> rule, it was error to deny him a hearing to demonstrate the warrant's consequent invalidity; and 2) that in the absence of the misstatements claimed (and even on the assumption of their truth) the affidavit supporting the warrant application failed to provide probable cause to believe that a search of Larson's home and the computers kept there would reveal evidence that he had attempted to obtain or possess child pornography. We find no merit in either claim.[1]

As to the former, a <u>Franks</u> hearing is warranted only "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-156. The focus of Larson's request for a <u>Franks</u> hearing was the agent's description of the female child figure in the "my toy" photos as

---

[1] Larson raised two other issues requiring no extended consideration. He argues that the warrant was "overbroad" because probable cause to believe that the premises held evidence of attempt does not authorize search or seizure of evidence of the completed crime. But evidence of completion is competent evidence of attempt. He also asserts that the good faith exception, <u>see</u> <u>United States</u> v. <u>Leon</u>, 468 U.S. 897, 923-924 (1984), is inapplicable here. But because we hold that probable cause was adequately made out, no issue of good faith reliance can arise.

a "life-like infant torso." The defendant argues that the photographs, not submitted with the warrant application but produced in the district court suppression hearing, show that none of those three terms was fairly descriptive. His claim here is not that the affidavit falsely claimed that an actual child was shown; the photos were in the "my toy" album and the agent's characterization of the figure shown as "life-like" make it apparent that the affiant was referring to the image of a doll or a sex toy.

Like the district court, we have examined the pictures in question, and we think the agent's quoted reference to them was unexceptional. They show the lower torso, front and back, of an obviously female figure. The fact that they depict only the genital area and buttocks does not render the affidavit's reference simply to "torso" misleading in this legal context. Nor does the fact that they show the skin of the female figure by less than a perfect simulation of a young child's flesh leave the overall description of "life-like" misleading; toys are not understood to include replications of the texture of a young human body that would fool an adult observer. Finally, the agent's identification of the toy figure as an "infant" was most obvious in several pictures that show an erect penis positioned across the center of the buttocks, which appears proportionally diminutive. We note also that, in several photographs, the toy is depicted next to

children's Cinderella underwear.   In sum, there is no serious argument that the affidavit contained "egregious misrepresentations" sufficient to "necessitat[e] a Franks hearing" to attack the warrant application, let alone to render the warrant invalid owing to any misrepresentation.  United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003).

The defendant's second claim fares no better: that even when the "my toy" testimony is considered, there was no showing to the level of probable cause to believe that his house and computers kept there would contain evidence of attempts to obtain and to possess forbidden child pornography.  To be sure, possession of the "my toy" photos was not subject to prosecution, since their subject was not an actual child.  See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 258 (2002).  But the "my toy" album as described by the agent was posted along with two other albums that did show actual children.  And although these were not pornographic, the association of pictures of real children with the "virtual" child pornography suggests that the defendant was interested in forbidden pornography showing actual children.  That allusion was confirmed by other evidence described in the warrant application.

Canadian authorities had alerted DHS investigators to an American computer user's account on the Russian site, which site contained for the most part merely suggestive images of minor

children but known to display actual child pornography for short periods of time. To trace the user's location, the authorities had sent two undercover email messages to the user, one purporting to link to "a little video of my 9 year old daughter," and another containing eight links identified by, among other things, "pthc," which the agent's affidavit explained meant "preteen hard core." The defendant soon made eleven attempts to reach those sites. DHS was able to trace the user's IP address to the defendant's house. While a woman and others also living in the house could have produced the albums, the defendant was the most likely source of the material since he was identified as the man convicted and imprisoned at the age of twenty-one, some twenty years ago, for the rape of two underage girls. The agent also stated that, in his experience as an investigator concerned with the subject matter, those who seek the forbidden pornography tend to keep the examples they obtain.

There is no serious question that this record would justify a reasonable belief that the house and home computers would contain evidence of attempts by the defendant to obtain and possess child pornography. See United States v. Reiner, 500 F.3d 10, 15 (1st Cir. 2007) ("Probable cause to issue a search warrant exists when 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (citing Illinois v. Gates,

462 U.S. 213, 238 (1983))).  The defendant simply argues on an evidentiary item-by-item basis that probable cause was wanting, whereas the sufficiency of evidence to justify the warrant must be evaluated on the record as a whole.  United States v. Flores, 888 F.3d 537, 544 (1st Cir. 2018) ("Attempting to analyze each piece of evidence in a vacuum is inconsistent with Supreme Court case law, which makes pellucid that each item is to be considered as part of the totality of the circumstances.").  As the defendant says, for example, not everyone who may click on a "pthc" link may understand that signal, but for purposes of probable cause it is enough to know that the combination of the four letters is commonly understood to be shorthand for what the agent testified based on his experience and thus subject to some weight in association with the other evidence mentioned.

The warrant was adequately supported and the evidence obtained was admissible.

Affirmed.